# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

GOOD NIGHT INVESTMENTS, LLC,

  Plaintiff,

v.

MARC OLIVER KOZLOWSKI,

  Defendant.

Case No.  5:25-cv-04576-BLF

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**

[Re: ECF No. 24]

Plaintiff Good Night Investments, LLC moves for default judgment against Defendant Marc Oliver Kozlowski.  ECF No. 24 ("Mot."); *see also* ECF No. 25 ("Reply").  Defendant has not responded to the motion.  The Court finds the motion suitable for decision without oral argument and VACATES the hearing scheduled for April 23, 2026.  *See* Civ. L.R. 7-1(b).

For the following reasons, the motion is GRANTED.

## I.     BACKGROUND

Plaintiff filed this suit on May 30, 2025.  *See* ECF No. 1 ("Compl.").  The Complaint alleges as follows.[1]  In December 2017, Defendant, through various entities owned and managed by Defendant, borrowed $1,450,000 from a third party.  Compl. ¶ 14; *see also id.* Ex. A.  The loan was secured by a motel located in Taney County, Missouri, known as the "Good Nite Inn" (the "Property").  *Id.* ¶¶ 14–17; *see also id.* Ex. B.  The Note and Deed of Trust were subsequently assigned to third parties unrelated to this action several times.  *Id.* ¶¶ 18–20, Exs. D, E, F.

---

[1] In considering Plaintiff's motion, the Court takes all factual allegations set forth in the complaint as true except for those related to damages.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *Lesnik v. Eisenmann SE*, No. 16-cv-01120-BLF, 2023 WL 3740318, at *2 (N.D. Cal. May 30, 2023).

United States District Court
Northern District of California

United States District Court
Northern District of California

In October 2019, Defendant solicited Plaintiff to invest in the Property, representing that Defendant intended to acquire, renovate, and directly operate and manage the Property. Compl. ¶ 21. Defendant proposed that, in exchange for purchasing the Note, Plaintiff would be repaid in fixed monthly dividend payments and other potential profits. *Id*. ¶¶ 21–25. Plaintiff purchased the Note at a discounted price of $1,038,369.90 and contributed the Note to one of Defendant's entities. *Id*. ¶ 23. The Parties executed an agreement whereby Plaintiff contributed the Note in exchange for a $1,450,000 capital credit and dividend return. *Id*. ¶ 25; *see also id.* Ex. H ("Operating Agreement").

In July 2020, Plaintiff discovered that Defendant failed to use funds as promised, allowing the Property and its obligations to fall into default. Compl. ¶¶ 26–27. The Parties subsequently entered negotiations, after which Defendant reaffirmed the debt and obligations. *Id*. ¶¶ 28–30; *see also id.* Ex. I ("Amended Note"). Defendant affirmed and acknowledged that the principal amount of the Note, as of January 1, 2023, was $1,876,826.30. *Id*. ¶ 30. Defendant promised to provide financial reporting, make payments from the Property's net operating income, participate in monthly meetings, and cure defects. *Id*. ¶ 31.

Defendant failed to make required payments and uphold the various promises. Compl. ¶ 33. The Property's operations began to suffer as Plaintiff was informed of unpaid staff and utilities, suspended booking accounts, disrepair, and undisclosed sale efforts. *Id*. ¶ 35. On November 1, 2024, Plaintiff gave written notice of default to Defendant, at which time Defendant gave additional assurances of curing the defaults. *Id*. ¶ 36. In November 2024, Plaintiff discovered that Veterans Day weekend yielded more than 113 prepaid reservations that went unfilled due to mismanagement of the Property. *Id*. ¶ 38. Plaintiff later learned that Defendant had engaged in similar conduct with other investors. *Id*. ¶ 39.

In March 2025, the Property was sold at a non-judicial foreclosure sale. *Id*. ¶ 41. Plaintiff acquired the Property through a $670,000 credit bid. *Id*. ¶ 42, Ex. J. After accounting for all credits and charges, a balance of $1,414,029.54 remained due under the Agreements, for which Plaintiff seeks relief through this action. *Id*. ¶¶ 43–44. The complaint this asserts claims for: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) conversion, (4) violation of

California Business & Professions Code § 17200 ("UCL"), (5) unjust enrichment, (6) declaratory relief, and (7) breach of written guaranty.

Plaintiff moved for entry of default against Defendant on September 8, 2025.  ECF No. 13. The Clerk entered default against Defendant on September 10, 2025.  ECF No. 14.  After the Court denied Defendant's motion to set aside the entry of default, *see* ECF No. 23, Plaintiff filed the present motion for default judgment.

## II.    LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, who is neither a minor nor an incompetent person, and against whom a judgment for affirmative relief is sought.  *See* Fed. R. Civ. P. 55(a).  After default has been entered, a court may enter default judgment.  *Id.* 55(b)(2); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In deciding whether to enter default judgment, courts in the Ninth Circuit consider the *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

In considering the *Eitel* factors, all factual allegations in the complaint are taken as true, except those related to damages.  *TeleVideo*, 826 F.2d at 917–18.  When the damages claimed are not readily ascertainable from the pleadings and the record, the court may either conduct an evidentiary hearing or proceed on documentary evidence submitted by the plaintiff.  *See Johnson v. Garlic Farm Truck Ctr. LLC*, No. 20-cv-03871-BLF, 2021 WL 2457154, at *2 (N.D. Cal. June 16, 2021).

## III.    DISCUSSION

### A.  Jurisdiction and Service

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  When a plaintiff requests

United States District Court
Northern District of California

default judgment, the court must also assess whether the defendant was properly served with notice of the action. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982); *Solis v. Cardiografix*, No. 12-cv-01485-EJD, 2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012).

Diversity jurisdiction exists under 28 U.S.C. § 1332 "where the matter in controversy exceeds the sum or value of $75,000" and there is complete diversity of the parties. Plaintiff is a Nevada limited liability company whose members are citizens of California, and Defendant is an individual domiciled in Florida. Complete diversity therefore exists. The amount in controversy exceeds $75,000, exclusive of interest and costs. The Court concludes that it possesses subject matter jurisdiction over this case.

Personal jurisdiction may be general or specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984). California's long-arm jurisdictional statute is "coextensive with federal due process requirements." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998). Thus, to exercise jurisdiction over a non-resident defendant, the defendant must have sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The factual allegations in the complaint, accepted as true, establish the following. Defendant purposefully directed conduct toward California by soliciting Plaintiff's investment and transmitting representations and written guarantees into California. *See* Compl. ¶ 21. The transactions and occurrences giving rise to the asserted causes of action occurred in Santa Cruz County, California, as specified by the Parties in the amended promissory note. *See, e.g.*, Amended Note ¶¶ 1–2 ("Borrower hereby unconditionally promises to pay to the order of Lender address at 1260 41st Avenue, Suite O, Capitola CA 95010"). The claims of the complaint arise out of forum-related activities. The Court concludes that an exercise of jurisdiction over the Defendant is reasonable and that it possesses personal jurisdiction in this case. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The Federal Rules of Civil Procedure allow service on an individual within a judicial district of the United States by the methods outlined in the rule itself, as well as by the methods permitted under the laws of the forum state (here, California) and the state in which service is

United States District Court
Northern District of California

attempted (Florida).  *See* Fed. R. Civ. P. 4(e).  As the Court explained in its prior order denying Defendant's motion to quash service and set aside default, "Plaintiff has filed a signed return of service" and Defendant has failed to adduce evidence "to overcome this prima facie evidence of valid service."  ECF No. 23 at 3–4 (internal quotation marks omitted) (quoting *craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 513 (N.D. Cal. 2011)).

### B.  *Eitel* Factors

Having concluded that the threshold requirements of service and jurisdiction are met, the Court turns to the *Eitel* factors.  For the reasons discussed below, the *Eitel* factors support default judgment on Plaintiff's claims.

### 1.  Possibility of Prejudice

The first *Eitel* factor requires the Court to consider whether Plaintiff would be prejudiced if default judgment is not entered.  Unless default judgment is entered, Plaintiff will have no other means of recourse against Defendant.  As such, Plaintiff will be prejudiced if default judgment is not entered.  *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018) (explaining that the first Eitel factors weighs in favor of default judgment where plaintiff otherwise "would have no other means of recourse against Defendants for the damages caused by their conduct"); *accord PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The first *Eitel* factor therefore weighs in favor of granting default judgment.

### 2.  Merits of Claims and Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims.  Courts often analyze these two factors together.  *See, e.g.*, *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together.").  These factors require Plaintiff to state a claim on which it may recover.  *Kloepping v. Fireman's Fund*, No. 94-cv-02684-TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996).  "Upon entry of a default judgment, facts alleged to establish liability are binding upon the defaulting party."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).  "[T]he general rule is that well-pled

allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

### a. Intentional Misrepresentation

The elements of an intentional misrepresentation claim in California are "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). When fraud is alleged, the heightened pleading standard of Rule 9(b) necessitates the circumstances constituting fraud are specific enough to give defendants notice of the alleged misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). To meet this standard, averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Plaintiff alleges multiple misrepresentations by Defendant, including how Plaintiff's funds would be used for investment purposes and to pay off existing liens. Compl. ¶ 46. Additionally, the complaint alleges that Defendant represented he would participate in monthly financial reporting, maintain the Property, operate the Property, and perform the necessary obligations in connection with the agreements. *Id*. The complaint alleges Defendant knew these statements were false when he made them. *Id*. ¶¶ 5, 6, 39, 51; *see also id.* ¶¶ 47–52 (alleging that Defendant intended to induce reliance on promises he did not intend to keep). Plaintiff further plausibly alleges that Defendant's misrepresentations induced investment by Plaintiff that Plaintiff otherwise would not have engaged in, *see id.* ¶¶ 3, 23, 50, 51, and that Plaintiff suffered damages as a result, *see id.* ¶¶ 6, 44, 52, 53.

Plaintiff has met the heightened pleading standard for fraud, as there are explicit details regarding what was promised, the timeline of the representations, and Defendant's motivation in inducing investment that eventually led to default and no repayment to Plaintiff. Thus, Plaintiff has sufficiently stated a claim for intentional misrepresentation against Defendant.

### b. Negligent Misrepresentation

The elements of a negligent misrepresentation claim in California are (1) "a misrepresentation of a past or existing material fact"; (2) "without reasonable grounds for believing it to be true"; (3) "with intent to induce another's reliance on the fact misrepresented"; (4) "justifiable reliance thereon by the party to whom the misrepresentation was directed"; and (5) damages. *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

The elements of negligent misrepresentation are like intentional misrepresentation except that a plaintiff need not show that the defendant knew of the falsity of the statement, but rather that the defendant lacked reasonable ground for believing the statement to be true. *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006). Because the Court concludes that Plaintiff has properly pled the cause of action for intentional misrepresentation, the Court finds that Plaintiff has also properly pled negligent misrepresentation. *See, e.g.*, *Tekion Corp. v. Brinkley*, No. 24-cv-08827-AMO-KAW, 2025 WL 3254936, at *6 (N.D. Cal. Sept. 25, 2025).

### c. Conversion

The elements of a conversion claim in California are "[1] ownership or right to possession of property, [2] wrongful disposition of the property right and [3] damages." *G.S. Rasmussen & Assocs. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).

Plaintiff has stated a meritorious claim of conversion. Plaintiff alleges that he purchased the Note for $1,038,369.90 and received a fair value credit of $1,450,000. Compl. ¶¶ 21–25. The complaint further alleges as follows. Defendant represented that Plaintiff's investment would be secured by a first position against the Property and that the investment would be repaid, along with interest or an option to share in profits. *Id*. ¶ 21. After repeated assurances by Defendant to make use of funds, despite continued failure to do so, and Plaintiff's discovery of Defendant's fraudulent activity in making false promises to other investors, it can be properly inferred that the money was converted for personal use. *Id*. ¶¶ 35–40, 63. Finally, Plaintiff alleges damage in the sum of $1,414,029.54. *Id*. ¶ 64.

The Court concludes that Plaintiff has sufficiently stated a claim for conversion against Defendant.

### d. Violation of California UCL

7

To plead a UCL claim, Plaintiff must demonstrate a business practice or act is either unlawful, unfair, or fraudulent.  Cal. Bus. & Prof. Code § 17200.; *see also Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998).  "The statute prohibits wrongful business conduct in whatever context such activity might occur."  *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, 1333 (2002).  The standard for UCL liability is intentionally broad and allows "courts maximum discretion to prohibit new schemes to defraud."  *Id*. at 1334.  Violation of almost any federal, state or local law may serve as the basis for a California UCL claim.  *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838–39 (1994).

Based on the Court's determinations as to the other claims stated in the complaint, Plaintiff has stated allegations that, taken as true, establish liability under the UCL statute.

### e.  Unjust Enrichment

The elements of an unjust enrichment claim in California are "the receipt of a benefit and the unjust retention of the benefit at the expense of another."  *Peterson v  Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008).

Plaintiff alleges Defendant has wrongfully obtained advantages based and profits from Plaintiff based on his fraud scheme.  Treating these allegations as true, the Court finds Plaintiff has adequately pleaded a claim for unjust enrichment.  *Simple Design Ltd. v. Enerjoy Ltd.*, 710 F. Supp. 3d 817, 825 (C.D. Cal. 2024).

### f.  Declaratory Relief

The Declaratory Judgments Act requires that a party seeking declaratory relief must allege an actual controversy regarding a matter within federal subject matter jurisdiction.  *See* 28 U.S.C. § 2201(a).  Once these two requirements are met, a presumption exists that a court may hear a declaratory judgment action.  *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998).

As discussed above, the complaint sufficiently alleges a cognizable cause of action that is redressable through declaratory relief.

### g.  Breach of Written Guaranty

8

Breach of a written guaranty is a contractual cause of action that requires proof of the same elements as breach of contract. *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971). The elements of breach of contract are in California are (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

Plaintiff has attached the guaranty agreements and alleged facts demonstrating its performance, Defendant's breaches, and resulting damages. *See* Compl. ¶¶ 26–44, Exs. A, I. The Court concludes that Plaintiff has stated a claim for breach of contract. *See Omni Fin., LLC v. Glob. Petroleum, LLC*, No. 19-cv-00031-BLF, 2019 WL 5626631, at \*4 (N.D. Cal. Oct. 31, 2019).

### 3. Sum of Money at Stake

Under the fourth *Eitel* factor, the Court must consider the amount of money at stake in relation to the seriousness of the Defendant's conduct. "Default judgment is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions." *HICA Educ. Loan Corp. v. Warne*, No. 11-cv-04287-LHK, 2012 WL 1156402, at \*3 (N.D. Cal. Apr. 6, 2012).

Here, Plaintiff seeks $1,414,029.54 in compensatory damages, representing the unrecovered balance of its investment after foreclosure, together with statutory interest and equitable restitution. While this is a large sum, the amount requested is supported by the terms of the secured promissory note, investment records, foreclosure documents, and sworn declarations, and it is not unreasonable considering Defendant's actions.

The Court finds that the fourth *Eitel* factor weighs in favor of granting default judgment.

### 4. Possibility of Factual Dispute; Excusable Neglect

Under the fifth and sixth *Eitel* factors, the Court considers whether there is the possibility of a dispute over any material fact and whether the default was due to excusable neglect. *See Ridola*, 2018 WL 2287668, at \*13.

Other than Defendant's rejected attempt to challenge service, Defendant has submitted nothing to contradict the well-pled allegations in the complaint. ECF Nos. 15, 23. There is no

United States District Court
Northern District of California

9

United States District Court
Northern District of California

evidence that Defendant's failure to participate in the litigation is due to excusable neglect. Defendant was actively involved in the lawsuit, evidenced by the Motion to Quash Service and Set Aside Default. ECF No. 15. On this record, the Court finds that there is no possibility that Defendant could dispute any material fact or establish that default was caused by excusable neglect.

The fifth and sixth *Eitel* factors therefore weigh in favor of granting default judgment.

### 5. Policy Favoring Decision on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering a default judgment." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d. at 1472, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *PepsiCo*, 238 F. Supp. 2d at 1177.

While this factor weighs against granting default judgment, the Court concludes that it is outweighed by the other *Eitel* factors. *See, e.g.*, *Ridola*, 2018 WL 2287668, at *13.

### C. Relief to be Awarded

Because the Court concludes that default judgment is warranted, it now considers Plaintiff's request for relief. Plaintiff is required to prove the amount of damages, since neither the fact of entry of default itself nor the allegations in the complaint is sufficient to establish the amount of damages. *See, e.g.*, *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The Court may determine the amount of damages without an evidentiary hearing if "the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### 1. Compensatory Damages

Under California law, compensatory damages are available for breach of contract and are measured by the amount of damage caused by the defendant's breach. *Lewis Jorge Constr. Mgmt. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 971 (2004). Similarly, compensatory damages for

conversion are limited to the value of the property at the time of conversion. *Spates v. Dameron Housing Ass'n*, 114 Cal. App. 4th 208, 221 (2003). Since the causes of action pleaded in the complaint (i.e., misrepresentation, conversion, breach of written guaranty) represent alternative theories of liability arising out of the same injury, Plaintiff may not obtain double recovery. *See, e.g.*, *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1005 (9th Cir. 2008).

Plaintiff requests compensatory damages of $1,414,029.54. *See* Mot. at 8–9. The complaint calculates compensatory damages as follows:

| ITEM | AMOUNT |
|---|---|
| Principal | $1,450,000.00 |
| Accrued Interest | $856,493.15 |
| Borrower Payments | ($82,700.00) |
| Note Payments | ($192,667.75) |
| Attorneys' Fees | $23,172.50 |
| Foreclosure Fees | $9,950.00 |
| Protective Advances | $19,781.64 |
| Trustee's Sale | ($670,000.00) |
| **Total** | **$1,414,029.54** |

Compl. ¶ 43. Plaintiff warrants that these "amounts are derived from Plaintiff's business records, which are maintained in the ordinary course of business." Khalsa Decl. ¶ 36. Plaintiff asserts that the requested total figure includes the total "$1,038,369.90 [invested] in reliance on Defendant's fraudulent representations" and "substantial protective advances to prevent foreclosure under the first deed of trust," and that "[a]fter application of a credit bid at foreclosure, Plaintiff's unrecovered losses total $1,414,029.54." Mot. at 8–9.

The Court is satisfied that the foregoing calculation accurately reflects Plaintiff's unrecovered losses due under amended promissory note. The Court notes, however, that Plaintiff has included in his calculation for compensatory damages his request for attorneys' fees. *See* Compl. ¶ 85 ("As a direct and proximate result of the breach, Plaintiff was forced to incur, and will continue to incur attorneys' fees and costs in an amount subject to proof at trial."). Because Plaintiff separately requests attorneys' fees incurred in litigating this action, the Court deducts the requested $23,172.50 from the compensatory damages award to avoid double counting and separately considers the final amount of attorneys' fees requested.

The Court accordingly AWARDS Plaintiff $1,390,857.04 in compensatory damages.

## 2. Prejudgment Interest

The decision whether to award prejudgment interest is left to the Court's discretion. *Twin City Sportserv., Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1310 (9th Cir. 1982); *see also United States v. Cal. State Bd. of Equalization*, 650 F.2d 1127, 1132 (9th Cir. 1981) ("Awards of pre-judgment interest are governed by considerations of fairness and are awarded where it is necessary to make the wronged party whole."). California law provides that parties are entitled to prejudgment interest on damages where the principal amount is certain. Cal. Civ. Code § 3287(a). "Typically, damages are deemed certain or capable of being made certain when 'there is essentially no dispute between the parties concerning the basis of computation of damages' and the underlying dispute centers solely on the question of liability." *W. Air Charter, Inc. v. Schembari*, No. 17-cv-00420-JGB (KSx), 2019 WL 6998789, at *2 (C.D. Cal. Mar. 7, 2019) (quoting *Fireman's Fund Ins. Co. v. Allstate Ins. Co.*, 234 Cal. App. 3d 1154, 1173 (1991)).

Here, Plaintiff requests to recover prejudgment interest for the conversion claim beginning on May 27, 2025. *See* Compl. at Prayer. Under California law, a prevailing plaintiff in a conversion action is entitled to prejudgment interest from the time of the taking to the judgment date at a rate of 7% per annum. *See* Cal. Const., art. XV, § 1. Accordingly, Plaintiff is entitled to recover prejudgment interest accruing at a rate of 7% per annum from May 27, 2025, to the entry of default judgment. To avoid duplicative recovery, the Court will not award damages that would overlap with interest or fees already accounted for; based on its review of the Complaint, the Court concludes that Plaintiff has only demonstrated that his compensatory damages of $1,038,369.90 (i.e., the discounted cost of the Note) were sufficiently certain for the purpose of awarding prejudgment interest.

Dividing $1,038,369.90 by 365 days and applying the 7% rate, prejudgment interest accrues at a rate of $199.14 per diem. The Court AWARDS $199.14 per day up until entry of judgment or 317 days, totaling $63,127.38.

## 3. Restitution and Disgorgement

While California courts have interpreted the language of § 17200 broadly, "prevailing plaintiffs are generally limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed*

*Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (citation omitted). The general understanding of "restitution" is to restore the party to the position they occupied before a particular event. *Hughey v. United States*, 495 U.S. 411, 416 (1990). Additionally, a plaintiff suing under the UCL must establish the lack of adequate remedy at law before securing equitable restitution for past harm. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). No such showing has been made here.

Because Plaintiff will be restored to the position occupied prior to the parties' contract through the compensatory damages awarded, the Court declines to award additional damages for restitution or disgorgement.

**4. Attorneys' Fees**

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). Under California law, "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Cal. Code Civ. Pro. § 1032(b). Section 1033.5 lists the costs that are allowable, noting that attorneys' fees are only allowed when otherwise authorized by contract, statute, or law. *Id.* § 1033.5(10); *see also Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1248 (2012). Plaintiff is entitled to recover reasonable attorneys' fees incurred in enforcing the breach of written guaranty claim pursuant to the express provision set forth in the Amended and Restated Promissory Note, *see* Amended Note ¶ 8 ("If Borrower fails to timely pay . . . or fails to timely perform any of its duties . . . and Lender takes any action to collect the amount due . . . then Borrower agrees to pay all costs and expenses of any such action to collect, suit or proceeding incurred by Lender, including without limitation reasonable fees and disbursements of Lender's attorneys and their staff."). Cal. Code Civ. Pro. § 1717.

In calculating awards for attorney's fees, courts use "the lodestar method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *amended on denial of reh'g*,

United States District Court
Northern District of California

13

108 F.3d 981 (1997). The moving party bears the burden of providing relevant documentation demonstrating the reasonableness of the hours spent on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). When determining the reasonable hourly rate, the court must weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986), *amended on denial of reh'g*, 808 F.2d 1373 (1987); *see also Blum v. Stenson*, 465 U.S. 886, 886 (1984).

Plaintiff seeks $65,121.25 in attorneys' fees. *See* Declaration of Matthew Backowski ("Backowski Decl."), ECF No. 24-2. As of March 4, 2025, Plaintiff pleaded total fees accrued as $23,172.50. Compl. ¶ 43. The Court limits the recovery to the amount pled up March 4, 2025. As such, the Court will consider additional attorneys' fees following March 4, 2025. Attorneys' fees total $25,748.75, based on 72.5 hours worked at varying hourly rates. *See* Backowski Decl., Ex. A at 10–14. Counsel billed at a rate of $400 per hour. *Id.* ¶ 17. Counsel also requests payment for paralegal work at a rate of $175 per hour. *See id*. These billing rates are reasonable and consistent with rates charged by similarly experienced attorneys in the Northern District of California.

Turning to the hours spent on this matter, the total time billed amounts to 72.5 hours, encompassing work on the preparation of default and foreclosure matters, investigation and preparation of the complaint, service of the complaint, and related case and motion practice. *See* Backowski Decl. Exs. A, B. The Court finds the total number of hours spent to be reasonable and in reviewing each billing entry, the Court finds the time spent per task to also be reasonable.

The Court accordingly AWARDS $48,921.25 in attorneys' fees.

### 5. Costs

The court may order costs other than attorney's fees to the prevailing party in an action unless federal law or the rules of civil procedure provide otherwise. Fed. R. Civ. P. 54(d)(1). In the Northern District of California, "Civil Local Rule 54-3 provides recovery only of the following: fees for filing and service of process, reporters' transcripts, depositions, reproduction and exemplification, witness expenses, fees for masters and receivers, costs on appeal, and costs

United States District Court
Northern District of California

14

on bonds and security." *J & J Sports Prods., Inc. v. Rodriguez*, No. 13-cv-05551-BLF, 2014 WL 2931218, at *4 (N.D. Cal. June 27, 2014).

Plaintiff seeks $1,466.40 in costs. Backowski Decl. ¶ 17, Ex. A. Of this amount, $400 is attributed to a "Consulting Fee to Hanno Powell." *Id*. Ex. A. This cost is not permissible under the Local Rules. Without more detail, such investigative costs will not be awarded by this Court. As such, the Court allows only the various filing and service of process fees and AWARDS $1,066.40 in costs.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

(1) Plaintiff's Motion for Default Judgment is GRANTED.

(2) Judgment is entered in favor of Plaintiff GOOD NIGHT INVESTMENTS, LLC and against Defendant MARC OLIVER KOZLOWSKI on each of Plaintiff's claims.

(3) The total judgment entered in favor of Plaintiff and against Defendant is $1,503,972.07. Plaintiff is awarded compensatory damages in the amount of $1,390,857.04, which damages were directly and proximately caused by Defendant's fraud, conversion, and related intentional misconduct. Plaintiff is awarded attorneys' fees and costs in the amount of $49,987.65. Plaintiff is entitled to $199.14 per day in prejudgment interest for the 317 days that elapsed between May 27, 2025, to the entry of judgment, totaling $63,127.38. Post-judgment interest SHALL accrue on the judgment at the rate prescribed by 28 U.S.C. § 1961 from the date of entry of judgment until paid.

**IT IS SO ORDERED.**

Dated: April 9, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

15